UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PERRY ALBERTS,<br> Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 3:24-cv-3282-SEM-EIL<br>) |
| BRITTANY GREENE, et al.,<br> Defendants. | )<br>)<br>) |

## MERIT REVIEW ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff *pro se* Perry Alberts has filed a Complaint (Doc. 1), followed by an Amended Complaint (Doc. 10), under 42 U.S.C. § 1983 that is before the Court for screening, together with Motions for Temporary Restraining Order (Docs. 11, 12) and various discovery motions (Docs. 3, 4, 8, 9). The Court finds that the Amended Complaint states an Eighth Amendment claim for deliberate indifference to a serious medical need but that Plaintiff's motions must be denied.

### I. COMPLAINT

#### A. Screening Standard

The Court must "screen" Plaintiff's complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C.

Page **1** of **19**

§ 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### B. Facts Alleged

Plaintiff's Motion for Leave to File Amended Complaint (Doc. 10) is GRANTED, pursuant to Rule 15(a)(1). The Amended Complaint (Doc. 10) is now the operative pleading in this case and replaces the initial Complaint (Doc. 1) in its entirety.

At all times relevant to his Complaint, Plaintiff was an inmate at Western Illinois Correctional Center ("Western").

Plaintiff's suit names as Defendants Warden Brittany Greene, Doctors Matticks, Trusewych, Ek, and Gordon, Nurse Practitioner

Clarkson, Health Care Unit Administrator Ashcraft, and Wexford Health Sources, Inc. ("Wexford").

Beginning in November 2017, Plaintiff began suffering from a burning rash that caused excruciating pain and discomfort. On May 8, 2018, Plaintiff was seen by Defendant Matticks, who performed a punch biopsy of the rash on Plaintiff's left leg/buttocks. Plaintiff never received the results of the biopsy. Defendant Matticks told Plaintiff that the skin that was biopsied would close and heal on its own.

The opening instead grew and began to leak blood and discharge pus. The area frequently became infected and caused Plaintiff great pain, as the open wound was exposed to germs whenever Plaintiff needed to sit on the toilet.

Plaintiff began to experience some relief when he was prescribed prednisone by a non-party provider at Quincy Medical Group in October 2018. Defendant Trusewych examined Plaintiff that month and noted the biopsy area was healing with prednisone. However, beginning in late November 2018, Plaintiff's prescription for prednisone ran out and Defendant Trusewych ordered a second biopsy (which never occurred) without refilling his prescription.

Plaintiff submitted at least 25 sick call requests from November 30, 2018, until March 18, 2019, when he was next seen by Defendant Trusewych. Plaintiff reported that the pain from the open biopsy wound was so severe it caused difficulty walking. Trusewych again prescribed prednisone for Plaintiff at that time and again ordered a biopsy that never occurred. The prednisone continued to be helpful for Plaintiff in April.

However, by May 2019, Defendant Trusewych prescribed a Kenolog ointment for six months. The Kenolog had no healing effect on the biopsy wound. Plaintiff suffered excruciating pain and, at times, complete numbness in his leg.

Plaintiff placed dozens of sick call requests, without being seen by any health care providers for his leg or burning rash. He spoke directly with Defendants Greene and Ashcraft when they walked through the cell house, but they advised he should be patient while health care focused on treating COVID-19.

On February 5, 2021, Plaintiff saw Defendant Trusewych and reported excruciating pain, difficulty walking, a continuing burning rash, and an unhealed biopsy wound. Trusewych prescribed no medication at this time.

From February 5, 2021, to June 9, 2022, Plaintiff continued to submit sick call requests regarding pain, discharging pus and blood, and odor from his wound. Plaintiff saw Defendant Trusewych again on June 9, 2022, but Trusewych prescribed Ivermectin for scabies, which had no effect on the rash or open wound. Plaintiff continued to submit sick call requests.

Plaintiff next saw Defendant Trusewych on August 26, 2022. Trusewych documented a worsening post-biopsy lesion and rash. Trusewych told Plaintiff that the only way to close the wound would be to perform a skin graft, which Wexford would not pay for. Trusewych prescribed prednisone.

On October 4, 2022, Plaintiff against saw Defendant Trusewych, who documented a worsening rash and nonhealing biopsy that was infected. Trusewych prescribed Keflex and prednisone. From this visit until January 20, 2023, the biopsy wound was better while Plaintiff was taking prednisone, but symptoms of infection of the wound would return as soon as Plaintiff's prednisone prescription ran out. However, prednisone causes side effects on kidney and liver functioning, and Plaintiff was diagnosed with cysts on both kidneys in November 2023.

In February and May 2023, Plaintiff saw Defendant Trusewych, who prescribed other drugs that had no effect on Plaintiff's rash or wound and ordered another biopsy that never occurred.

In October and November 2023, Plaintiff saw Defendant Clarkson while Defendant Trusewych was on medical leave. Plaintiff explained the length of time that he had been suffering from the rash and wound, as well as the source of the wound. Clarkson prescribed sulfa methazine on the first occasion and no prescription or treatment on the second visit.

Plaintiff was not seen by a doctor or nurse practitioner in from December 2023 through February 2024, or even on March 12, 2024, when Plaintiff's cellhouse sergeant called health care after observing Plaintiff's bleeding and infected wound. After the sergeant called again on March 26, 2024, Plaintiff was prescribed Keflex and prednisone by Defendant Clarkson. Plaintiff was seen in health care for a wound check and dressing changes in April, May, and mid-June 2024, after which Defendant Clarkson discontinued Plaintiff's wound dressings and cleanings.

On July 22, 2024, Plaintiff was seen by Defendant Ek, who examined Plaintiff's wound and said he could not or would not treat it.

On July 24, 2024, Plaintiff was seen by Defendants Gordon and Matticks. Defendant Matticks assured Plaintiff that he would look into the records of the biopsy he performed in May 2018. There is no record that Defendants met with Plaintiff in July 2024 or that Defendant Matticks ever reviewed the records regarding Plaintiff's May 2018 biopsy.

Plaintiff had his wound checked, cleaned, and dressed by a nurse in late July and early August 2024. He saw Defendant Gordon on August 9 and September 20, 2024. Gordon referred Plaintiff to an outside dermatologist. On both occasions, Defendant Gordon noted continued drainage from Plaintiff's wound, but wound cleanings and dressing changes were discontinued shortly after Plaintiff's appointments, first on August 10 and then again on September 27, 2024. Plaintiff is not allowed to have bandages or other wound treatment in his cell to clean or change the dressing himself.

On December 5, 2024, Plaintiff was seen by the same non-party provider at Quincy Medical Group who had treated him six years prior. This provider performed a new biopsy and informed Plaintiff that he would be able to provide treatment that healed the wound and stopped the burning rash.

### C. Analysis

Plaintiff's Amended Complaint states an Eighth Amendment claim of deliberate indifference to a serious medical need against each of the individual Defendants. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (The two elements to state an Eighth Amendment deliberate indifference claim are that (1) plaintiff had an objectively serious medical need, and (2) defendant was deliberately indifferent to that need).

Plaintiff has adequately alleged each of the Defendant medical providers regularly denied him prescription medications or any form of pain management, despite being aware of severe pain and difficulty walking, and allowed Plaintiff to suffer from a wound that was infected on a recurring basis, for years, without any coherent treatment plan.

As for Defendants Greene and Ashcraft, although they were not directly responsible for providing Plaintiff's medical care, "[e]ven personnel who are not doctors are not permitted simply to ignore a detainee's plight, nor can they deliberately obstruct or delay a patient from receiving necessary treatment." *Smego v. Mitchell*, 723 F.3d 752, 757 (7th Cir. 2013) (internal citations omitted). Plaintiff directly informed both Greene and Ashcraft that he had sent dozens of sick call requests for treatment of an infected wound and yet continued to go months without any treatment whatsoever. Plaintiff adequately alleges that these Defendants simply ignored his requests to be examined by health care providers.

Finally, with respect to Defendant Wexford, there is no vicarious liability under § 1983 solely based upon an employer or supervisory relationship. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017). Rather, to proceed on a claim against an institution rather than an individual defendant, Plaintiff must allege "(1) that he…suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage" of that defendant, acting under

color of state law. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981); *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789-90 (7th Cir. 2014).

As indicated above, Plaintiff has adequately alleged that his Eighth Amendment rights have been violated. Further, Plaintiff has alleged that this violation was, at least in part, a result of Wexford policies not to pay for a skin graft, not to allow repeat biopsies ordered by its providers, and to delay necessary care due to COVID-19 and while Defendant Trusewych was on medical leave.

Therefore, Plaintiff may also proceed on a *Monell* claim against Defendant Wexford.

## II. PRELIMINARY INJUNCTIVE RELIEF

Plaintiff filed a Motion for Injunction and Temporary Restraining Order (Doc. 11) on March 24, 2025, followed by a Motion to Allow Injunction and Temporary Restraining Order (Doc. 12) on April 9, 2025, and a Motion (Doc. 13) objecting to any time for Defendants to file a response to these motions.

### A. Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *accord Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm International v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

The Prisoner Litigation Reform Act ("PLRA") limits the scope of the court's authority to enter an injunction in the corrections context. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); see also *Westefer*, 682 F.3d at 683 (PLRA "enforces a point repeatedly made by the Supreme

Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

### B. Facts Alleged

Plaintiff's Motions recite many of the facts alleged in the Amended Complaint, summarizing persistent—and often worsening—symptoms of a skin rash/wound for a period of approximately seven years.

Plaintiff recounts that on December 5, 2024, the non-party dermatologist at Quincy Medical performed a biopsy that tested positive for eczema and could be treated with an injection every 6 months. Plaintiff alleges that Western has had these biopsy results for at least 3 to 4 months but that none of Defendants have seen Plaintiff to formulate a treatment plan or to provide pain medication. A nurse told Plaintiff that he will need to be seen by a doctor to receive pain medications but that the wait will be long. Plaintiff alleges he continues to suffer from pain and lesions that cause difficulty walking.

Plaintiff asks for an injunction that restrains Wexford and its providers from treating Plaintiff's eczema and an order that Quincy Medical dermatologist(s) instead treat that condition. Plaintiff further requests that Wexford providers follow proper wound care protocol, including daily cleaning, bandaging, and antibiotics for Plaintiff's lesions, and prescribe continuing pain medication(s).

**C. Analysis**

The purpose of a temporary restraining order or preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Association v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980).

First, Plaintiff requests that a dermatologist at Quincy Medical formulate and execute a treatment plan for his eczema. However, neither Quincy Medical nor any of its providers are parties to this lawsuit. This Court therefore has no authority to issue an injunction mandating any treatment or other action by Quincy Medical.

Second, if Plaintiff is seeking an ongoing referral to Quincy Medical by Wexford or other Defendants, that would constitute an affirmative act by Defendant(s) and therefore constitutes a

mandatory preliminary injunction. *See Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)); *see also W.A. Mack v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (mandatory injunctions very rarely issue, except on the clearest equitable grounds).

Based upon the record before it, the Court finds that Plaintiff has a good likelihood of success on the merits of his deliberate indifference claim.

However, the likelihood of irreparable harm at this stage is mixed. The record from Plaintiff's December 5, 2024, evaluation and biopsy with Quincy Medical indicated Plaintiff was in "no acute distress" and that he was prescribed a topical ointment and an oral anti-inflammatory antibiotic for his skin rash and lesions and was advised of proper wound care. Follow-up treatment was noted to be only "as needed," pending the pathology report.

The pathology report, which was dated December 10, 2024, confirmed a diagnosis of early/partially-treated psoriasis, chronic

eczema, and lichen planus. The report indicated negative tests for fungal elements or bacteria. None of the records submitted by Plaintiff include any treatment plan recommended by Quincy Medical following the biopsy results.

The Court does not discount the pain or discomfort that Plaintiff faces, nor the possible risk of infection, due to ongoing rashes and skin lesions. However, based upon the most recent medical records from December 2024, there is no indication that Plaintiff was or is suffering from an active infection that currently presents irreparable harm to his health.

Mindful that mandatory injunctions are very sparingly issued, the Court denies Plaintiff's request that the Court order Defendants to provide a specific referral, treatment, or medication at this time. The Court advises, however, that this denial is without prejudice to Plaintiff filing a future request for temporary injunctive relief.

### III. DISCOVERY MOTIONS

Finally, Plaintiff has filed motions seeking documentary evidence in this case: a Motion for Photo of Wound (Doc. 3) and Motion for Medical Records (Doc. 4), followed by Motions for Default (Docs. 8, 9) relating to those earlier Motions.

Requests for evidence, such as photographs and medical records, are typically made through service of written discovery rather than by filing a motion with the Court. *See* Fed. R. Civ. P. 34. Defendants have not yet been served, and this case is not yet in the discovery phase. Following service, the Court will enter a scheduling order that advises Plaintiff of discovery procedures and deadlines, and the necessary requirements before Plaintiff files a motion asking this Court to intervene to compel a party to produce certain responses or documents.

Therefore, Plaintiff's Motions (Docs. 3, 4, 8, 9) relating to discovery are DENIED as premature.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Leave to File Amended Complaint [10] is GRANTED. According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment deliberate indifference claim against Defendants Greene, Matticks, Ashcraft, Trusewych, Clarkson, Ek, and Gordon, and a *Monell* claim against Defendant Wexford. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

2) **Plaintiff's Motions [11], [12], [13] requesting injunctive relief are DENIED, without prejudice.**

3) **Plaintiff's Motions [3], [4], [8], [9] requesting discovery are DENIED as premature.**

4) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

5) **The Court will attempt service on Defendants by mailing waivers of service. Defendants have sixty days from service to file their Answers. If a Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

6) **Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

7) **Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth a Defendant's positions. The Court does not rule on the merits of those positions unless and until a Defendant files a motion. Therefore, no response to an Answer is necessary or will be considered.**

8) **This District uses electronic filing, which means that, after Defendants' counsel have filed an appearance, counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.**

9) **Defendants' counsel is granted leave to depose Plaintiff. Defendants' counsel shall arrange the time for the deposition.**

10) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

11) **If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

12) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

13) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

ENTERED April 30th, 2025.

> s/ *Sue E. Myerscough*
> _____
> SUE E. MYERSCOUGH
> UNITED STATES DISTRICT JUDGE