E-FILED
Wednesday, 07 January, 2026  03:04:55 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| PERRY ALBERTS, | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) No. 3:24-cv-3282-SEM-DJQ |
| | ) |
| BRITTANY GREENE, et al., | ) |
|     Defendants. | ) |

## MERIT REVIEW ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is a Motion for Leave to File Second Amended Complaint (Doc. 60) filed by Plaintiff *pro se* Perry Alberts, who is incarcerated at Western Illinois Correctional Center ("Western"). For the following reasons, the Motion is granted. Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Defendants Brittany Greene, Roderick Matticks, Kathy Ashcraft, Zorian Trusewych, Shana Clarkson, Jonathan Ek, and Berkman Gordon, a *Monell* claim against Defendant Wexford Health Sources, Inc. ("Wexford"), and a First Amendment retaliation claim against Defendant Gordon.

## I. Background

On April 30, 2025, the Court entered a Merit Review Order (Doc. 14) on Plaintiff's Amended Complaint and allowed Plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Defendants Greene, Matticks, Ashcraft, Trusewych, Clarkson, Ek, and Gordon and a *Monell* claim against Defendant Wexford.

Defendants answered Plaintiff's Amended Complaint. The Court entered a Scheduling Order on July 26, 2025. (Doc. 29). Any motions for leave to amend were due by October 14, 2025. *Id.* at p. 2.

On December 8, 2025, Plaintiff filed a Motion for Leave to File Second Amended Complaint seeking to add a First Amendment retaliation claim against Defendant Gordon. (Doc. 60). Defendants' response to Plaintiff's Motion was due on December 22, 2025, but no response was filed.

Discovery closes on February 16, 2026, and dispositive motions are due on March 19, 2026.

## II. Motion for Leave to File Second Amended Complaint

### A. Legal Standard

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be given freely, when justice so requires. FED. R. CIV. P. 15(a)(2). Here, the time allowed for amendments passed on October 14, 2025. (Doc. 29 at p. 2). Therefore, Plaintiff's Motion is reviewed under the "heightened good-cause standard of Rule 16(b)(4)." *Brehmer v. Dittman*, No. 13-0888, 2014 WL 3404977, at *9 (E.D. Wis. July 10, 2014) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'" *Id.* at 720. In determining whether there is good cause to allow the amendment, the Court is to consider "the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to

defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

### B. Analysis

In Plaintiff's Second Amended Complaint, Plaintiff seeks to add a First Amendment retaliation claim against Defendant Gordon.

Plaintiff alleges he submitted multiple sick call requests between May 16, 2025, and June 10, 2025, due to chest pain and difficulty breathing. On June 11, 2025, Plaintiff suffered a heart attack and was rushed to Sarah D. Culbertson Memorial Hospital in Rushville, Illinois. Between June 11 and 18, 2025, Plaintiff underwent three surgeries, including open heart surgery.

On July 1, 2025, Plaintiff returned to Western and was placed in the infirmary. Plaintiff alleges Defendant Gordon retaliated against him for filing this lawsuit and a Motion for Temporary Restraining Order by refusing to examine Plaintiff while he was in the infirmary recovering from open heart surgery. As a result, Plaintiff alleges his incision reopened and green pus flowed out of his chest cavity. Plaintiff also claims

Dr. Arnold, the surgeon who performed his open heart surgery, ordered him to undergo rehabilitation after the surgery. Plaintiff alleges it has been six months since his surgery, and he "has gone backwards instead of forwards." (Doc. 60 at p. 21). Plaintiff alleges he cannot walk more than 50 yards without stopping to catch his breath. Plaintiff also alleges his kidneys are working at 30% as a result of being prescribed Lasix to relieve the fluid around his heart.

The Court finds Plaintiff has established good cause to allow the proposed Second Amended Complaint. Plaintiff sought leave to file his Second Amended Complaint within a few months after Defendant Gordon began retaliating against him. Discovery has not closed; the parties have not filed dispositive motions; and no trial date is currently set. As a result, Defendants will not suffer undue prejudice. Finally, it does not appear that Plaintiff has a dilatory motive or that the amendment was motivated by bad faith.

Therefore, Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 60) is GRANTED pursuant to Federal Rule of Civil Procedure 15(a)(2). The Second Amended

Complaint is now the operative pleading in this case and replaces the Amended Complaint in its entirety.

## II. MERIT REVIEW ORDER

The Court will now conduct a merit review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A.

### A. Screening Standard

The Court must "screen" Plaintiff's Second Amended Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Second Amended Complaint, the Court accepts the factual allegations as accurate, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## B. Facts Alleged

At all times relevant to his Second Amended Complaint, Plaintiff was an inmate at Western.

Plaintiff's suit names as Defendants Warden Brittany Greene, Doctors Matticks, Trusewych, Ek, and Gordon, Health Care Unit Administrator Ashcraft, and Wexford.

Beginning in November 2017, Plaintiff began suffering from a burning rash that caused excruciating pain and discomfort. On May 8, 2018, Plaintiff was seen by Defendant Matticks, who performed a punch biopsy of the rash on Plaintiff's left leg/buttocks. Plaintiff never received the results of the biopsy. Defendant Matticks told Plaintiff the skin that was biopsied would close and heal on its own. The opening instead grew and began to leak blood and discharge pus. The area frequently became infected and caused Plaintiff great pain, as the open wound was exposed to germs whenever Plaintiff needed to sit on the toilet. Plaintiff began to experience some relief when he was prescribed prednisone by a non-party provider at Quincy Medical Group in October 2018. Defendant Trusewych examined Plaintiff that month

and noted the biopsy area was healing with prednisone. However, beginning in late November 2018, Plaintiff's prescription for prednisone ran out and Defendant Trusewych ordered a second biopsy (which never occurred) without refilling his prescription.

Plaintiff submitted at least 25 sick call requests from November 30, 2018, until March 18, 2019, when he was next seen by Defendant Trusewych. Plaintiff reported the pain from the open biopsy wound was so severe it caused difficulty walking. Defendant Trusewych again prescribed prednisone for Plaintiff at that time and again ordered a biopsy that never occurred. The prednisone continued to help Plaintiff. However, by May 2019, Defendant Trusewych prescribed a Kenolog ointment for six months, but the ointment had no healing effect on the biopsy wound. Plaintiff suffered excruciating pain and, at times, complete numbness in his leg. Plaintiff placed dozens of sick call requests, without being seen by any health care providers for his leg or burning rash. Plaintiff spoke directly with Defendants Greene and Ashcraft when they walked through the cell house, but they advised he should be

patient while health care focused on treating COVID-19. On February 5, 2021, Plaintiff saw Defendant Trusewych and reported excruciating pain, difficulty walking, a continuing burning rash, and an unhealed biopsy wound. Defendant Trusewych prescribed no medication at this time.

From February 5, 2021, to June 9, 2022, Plaintiff continued to submit sick call requests regarding pain, discharging pus and blood, and odor from his wound. Plaintiff saw Defendant Trusewych again on June 9, 2022, but Trusewych prescribed Ivermectin for scabies, which had no effect on the rash or open wound. Plaintiff continued to submit sick call requests. Plaintiff next saw Defendant Trusewych on August 26, 2022. Trusewych documented a worsening post-biopsy lesion and rash. Trusewych told Plaintiff the only way to close the wound would be to perform a skin graft, which Wexford would not pay for. Trusewych prescribed prednisone.

On October 4, 2022, Plaintiff again saw Defendant Trusewych, who documented a worsening rash and nonhealing biopsy that was infected. Trusewych prescribed Keflex and prednisone. From this visit until January 20, 2023,

the biopsy wound was better while Plaintiff was taking prednisone, but symptoms of infection returned as soon as Plaintiff's prednisone prescription ran out. However, prednisone causes side effects on kidney and liver function, and Plaintiff was diagnosed with cysts on both kidneys in November 2023.

In February and May 2023, Plaintiff saw Defendant Trusewych, who prescribed other drugs that had no effect on Plaintiff's rash or wound and ordered another biopsy that never occurred. In October and November 2023, Plaintiff saw Defendant Clarkson while Defendant Trusewych was on medical leave. Plaintiff explained the length of time that he had been suffering from the rash and wound, as well as the source of the wound. Clarkson prescribed sulfa methazine on the first occasion and no prescription or treatment on the second visit. Plaintiff was not seen by a doctor or nurse practitioner from December 2023 through February 2024, or even on March 12, 2024, when Plaintiff's cellhouse sergeant called health care after observing Plaintiff's bleeding and infected wound. After the sergeant called again on March 26,

2024, Defendant Clarkson prescribed Keflex and prednisone. Plaintiff was seen in health care for a wound check and dressing changes in April, May, and mid-June 2024, after which Defendant Clarkson discontinued Plaintiff's wound dressings and cleanings.

On July 22, 2024, Plaintiff was seen by Defendant Ek, who examined Plaintiff's wound and said he could not or would not treat it. On July 24, 2024, Plaintiff was seen by Defendants Gordon and Matticks. Defendant Matticks assured Plaintiff that he would look into the records of the biopsy he performed in May 2018. There is no record that Defendants met with Plaintiff in July 2024 or that Defendant Matticks ever reviewed the records regarding Plaintiff's May 2018 biopsy. Plaintiff had his wound checked, cleaned, and dressed by a nurse in late July and early August 2024. He saw Defendant Gordon on August 9 and September 20, 2024. Gordon referred Plaintiff to an outside dermatologist. On both occasions, Defendant Gordon noted continued drainage from Plaintiff's wound, but wound cleanings and dressing changes were discontinued shortly after Plaintiff's appointments, first on

August 10 and then again on September 27, 2024. Plaintiff is not allowed to have bandages or other wound treatment in his cell to clean or change the dressing himself.

On December 5, 2024, Plaintiff was seen by the same non-party provider, James Wheeler, at Quincy Medical Group who had treated him six years prior. The provider performed a new biopsy and informed Plaintiff that he could provide treatment. The provider prescribed Betamethasone, a topical steroid, to apply to the blade biopsy on December 5, 2024, but Defendant Gordon failed to order the medication until February 5, 2025.

Plaintiff alleges he submitted multiple sick call requests between May 16, 2025, and June 10, 2025, due to chest pain and difficulty breathing. On June 11, 2025, Plaintiff suffered a heart attack and was rushed to Sarah D. Culbertson Memorial Hospital in Rushville, Illinois. Between June 11 and 18, 2025, Plaintiff underwent three surgeries, including open heart surgery.

On July 1, 2025, Plaintiff returned to Western and was placed in the infirmary. Plaintiff alleges Defendant Gordon

retaliated against him for filing this lawsuit and a Motion for Temporary Restraining Order by refusing to examine Plaintiff while he was in the infirmary recovering from open heart surgery. As a result, Plaintiff alleges his incision reopened and green pus flowed out of his chest cavity. Plaintiff also claims Dr. Arnold, the surgeon who performed Plaintiff's open heart surgery, ordered Plaintiff to undergo rehabilitation after the surgery. Plaintiff alleges it has been six months since his open heart surgery, and he "has gone backwards instead of forwards." (Doc. 60 at p. 21). Plaintiff alleges he cannot walk more than 50 yards without stopping to catch his breath. Plaintiff also alleges his kidneys are working at 30% as a result of being prescribed Lasix to relieve the fluid around his heart.

Regarding the ongoing issues with his rash, Plaintiff alleges he received a letter from the James Wheeler, the provider at Quincy Medical Group, on November 3, 2025. The letter stated: "If the topical steroid does not work then we progress to trying different medications to see which ones works-those are typically shots, known as biologics." *Id.*

Plaintiff alleges Defendants continually treated him with prednisone, which had been ineffective.

On December 3, 2025, Dr. Miller filed a request for James Wheeler at Quincy Medical Group to treat Plaintiff's severe eczema by possibly using biologicals.

### C. Analysis

Plaintiff's Amended Complaint states an Eighth Amendment claim of deliberate indifference to a serious medical need against each of the individual Defendants. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (The two elements to state an Eighth Amendment deliberate indifference claim are that (1) plaintiff had an objectively serious medical need, and (2) defendant was deliberately indifferent to that need). Plaintiff has adequately alleged each of the Defendant medical providers regularly denied him prescription medications or any form of pain management, despite being aware of severe pain and difficulty walking, and allowed Plaintiff to suffer from a wound that was infected on a recurring basis, for years, without any coherent treatment plan.

As for Defendants Greene and Ashcraft, although they were not directly responsible for providing Plaintiff's medical care, "[e]ven personnel who are not doctors are not permitted simply to ignore a detainee's plight, nor can they deliberately obstruct or delay a patient from receiving necessary treatment." *Smego v. Mitchell*, 723 F.3d 752, 757 (7th Cir. 2013) (internal citations omitted). Plaintiff directly informed both Greene and Ashcraft that he had sent dozens of sick call requests for treatment of an infected wound and yet continued to go months without any treatment whatsoever. Plaintiff adequately alleges that these Defendants simply ignored his requests to be examined by health care providers.

With respect to Defendant Wexford, there is no vicarious liability under § 1983 solely based upon an employer or supervisory relationship. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 692 (1978); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017). Rather, to proceed on a claim against an institution rather than an individual defendant, Plaintiff must allege "(1) that he...suffered a deprivation of a constitutionally protected interest, and (2) that

the deprivation was caused by an official policy, custom or usage" of that defendant, acting under color of state law. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789-90 (7th Cir. 2014). As indicated above, Plaintiff has adequately alleged that his Eighth Amendment rights have been violated. Further, Plaintiff has alleged that this violation was, at least in part, a result of Wexford policies not to pay for a skin graft, not to allow repeat biopsies ordered by its providers, and to delay necessary care due to COVID-19 and while Defendant Trusewych was on medical leave. Therefore, Plaintiff may also proceed on a *Monell* claim against Defendant Wexford.

The Court also finds Plaintiff has stated sufficient facts to proceed on a First Amendment retaliation claim against Defendant Gordon. To establish First Amendment retaliation, Plaintiff must successfully allege that (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the Defendant's action. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Here, Plaintiff alleges

Defendant Gordon retaliated against him for filing the instant lawsuit against him and a Motion for Temporary Restraining Order by refusing to provide follow-up medical treatment after Plaintiff was discharged from the hospital on July 1, 2025, following open heart surgery.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Leave to File Second Amended Complaint [60] is GRANTED, and the Second Amended Complaint is now the operative pleading in this case. The Clerk is directed to file the Second Amended Complaint (Doc. 60).**

2) **According to the Court's Merit Review of Plaintiff's Second Amended Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with (1) an Eighth Amendment deliberate indifference claim against Defendants Greene, Matticks, Ashcraft, Trusewych, Clarkson, Ek, and Gordon, (2) a *Monell* claim against Defendant Wexford, and (3) a First Amendment retaliation claim against Defendant Gordon. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

3) **Defendants have returned executed Waivers of Service of Summons. No waivers need to be issued.**

4) **Defendants are directed to file an answer to Plaintiff's Second Amended Complaint within 21 days of this Order.**

**5)   Defendant Gordon is given leave to file a motion for summary judgment on exhaustion of administrative remedies regarding the First Amendment retaliation claim on or before March 9, 2026.**

**6)   The discovery deadline is RESET for May 18, 2026, and the dispositive motions deadline is RESET for June 17, 2026.**

ENTERED January 7, 2026.

s/ *Sue E. Myerscough*

_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE